Robert C. **BEITEL** and Ebbie F. Brownrigg, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 18984.

United States Court of Appeals Fifth Circuit.

July 25, 1962.

James Otis Herrington, San Antonio, Tex., for appellants.

K. Key Hoffman, Jr., Wayne F. Speck, Asst. U. S. Attys., Ernest Morgan, U. S. Atty., San Antonio, Tex., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

Beitel and Brownrigg were convicted on a two-count indictment. The first count charged that they "did knowingly and unlawfully conceal assets of the value of $2,987.26 from Casey Golightly, receiver in bankruptcy of the Estate of the said ROBERT C. BEITEL, said assets belonging to said estate in bankruptcy."[1]

The second count charged that Beitel and Brownrigg "combined, conspired, confederated and agreed to commit an offense against the United States, said combination, conspiracy, confederation and agreement continuing to and through August 31, 1960, the exact date of the termination being to the Grand Jurors unknown, the said offense being as follows, to-wit: to conceal assets belonging to the estate in bankruptcy of ROBERT C. BEITEL from Casey Golightly, duly appointed and qualified receiver of the estate in bankruptcy of the said ROBERT C. BEITEL, in violation of Title 18, United States Code, Section 152 * * *." Beitel was sentenced to serve five years on the substantive count and one year on the conspiracy count, the sentences to run consecutively. Brownrigg was sentenced to serve five years on both counts concurrently.

Upon appeal they make three claims of error concerning respectively: (1) the district court's failure to return property seized from Brownrigg and to suppress its use as evidence; (2) the denial of their motions to dismiss each count of the indictment; and (3) the denial of their motions for judgment of acquittal.

(1) Beitel owned and operated "Johnson's Hardware Store" located in San Antonio at 3217 South Presa Street. Brownrigg claimed to be the owner and operator of "Progress Metal Works," which did business in the rear part of the premises of "Johnson's Hardware Store" until shortly after an involuntary bankruptcy petition was filed against Beitel. "Progress Metal Works" was then moved to 714 North Alamo Street. The latter premises were searched under a warrant obtained upon an affidavit. See Rule 41, Federal Rules of Criminal Procedure, 18 U.S.C.A. The officers seized a large quantity of merchandise in boxes labeled "Johnson's Hardware," consisting of electrical supplies, lawn sprinklers, garden tools, etc., which were located under a tarpaulin in a storeroom on said premises.

Brownrigg insists that both the affidavit in support of the search warrant and the resulting seizure were insufficient because the property was not in any of the categories listed in subdivision (b) of Rule 41, supra.

"A warrant may be issued under this rule to search for and seize any property

"(1) Stolen or embezzled in violation of the laws of the United States; or

"(2) Designed or intended for use or which is or has been used as the means of committing a criminal offense; or

"(3) Possessed, controlled, or designed or intended for use or which is or has been used in violation of Title 18, U.S.C., § 957."

In support of that insistence, the brief cites Papani v. United States, 9 Cir., 1936, 84 F.2d 160, and Harris v. United States, 1947, 331 U.S. 145, 67 S.Ct. 1098,

[1] "Whoever knowingly and fraudulently conceals from the receiver, custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or from creditors in any bankruptcy proceeding, any property belonging to the estate of a bankrupt * * *.

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both." 18 U.S.C.A. § 152.

91 L.Ed. 1399. In the latter case the Supreme Court comments:

> "This Court has frequently recognized the distinction between merely evidentiary materials, on the one hand, which may not be seized either under the authority of a search warrant or during the course of a search incident to arrest, and on the other hand, those objects which may validly be seized including the instrumentalities and means by which a crime is committed, the fruits of crime such as stolen property, weapons by which escape of the person arrested might be effected, and property the possession of which is a crime."

331 U.S. at p. 154, 67 S.Ct. at p. 1103. Among other cases cited in support of that text is Matthews v. Correa, 2 Cir., 1943, 135 F.2d 534, at 537, where Judge Clark had said:

> "The line between fruit of the crime itself and mere evidence thereof may be narrow; perhaps this turns more on the good faith of the search than the actual distinction between the matters turned up. In any event, the articles in question are more than evidential; they are the very things withheld."

In the present case the merchandise seized is the very property which the Government claims to have been unlawfully concealed. We find both the search and the seizure to be reasonable and proper.

■■ (2) The defendants moved to dismiss each count of the indictment on the ground that it did not describe any property allegedly concealed with sufficient particularity to enable the defendants to prepare their defense or to form the basis of a plea of former jeopardy. The description in the first count was simply "assets of the value of $2,987.26," in the second count "assets belonging to the estate of Robert C. Beitel."

Judge Swan for the Second Circuit has commented:

> "The crime is one which is peculiarly within the bankrupt's own knowledge, and one which may be committed under circumstances which render impossible a description of the assets concealed. Where the very essence of the crime is secreting property, how can it be necessary to allege knowledge of that of which the defendant's own acts prevent any knowledge? It is enough to excuse particularity of description of the manner of committing the offense for the grand jurors to allege that they do not know the details. Durland v. United States, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709; United States v. Claflin, Fed.Cas.No. 14,798, 13 Blatchf. 178."

Kanner v. United States, 2 Cir., 1927, 21 F.2d 285, 287. In the present case, however, there is, and could be, no averment of lack of knowledge on the part of the grand jury.

Each count employs the word "assets" instead of "property" as used in 18 U.S. C.A. § 152. See footnote 1, supra. We deem it somewhat hypercritical to comment that "assets" include not only tangible property but debts due the bankrupt or any person for his use and any cause of action which the bankrupt has against any person arising from contract. 4 Words & Phrases Assets pp. 461, 462. Two cases decided by this Court on the same day are pertinent. In United States v. Goodman, 5 Cir., 1960, 285 F.2d 378, 380, we said:

> "The defendant further criticizes Count 6 for using the word 'assets' instead of the statutory word 'property', and contends that 'assets' has a broader meaning than 'property.' However, where 'assets' is used in the count, it is in each instance described or limited by such a phrase as 'represented by monies of the said corporation' or 'represented by the following: [followed by a complete description of various checks].' Clearly, as so limited or described, 'assets' is the legal equivalent of 'property.'"

On the other hand, in United States v. Strauss, 5 Cir., 1960, 285 F.2d 953, 955, after a detailed discussion, we held:

"When the indictment is construed as a whole, that is the general averments of paragraph 9 with the specific allegations of paragraphs 10 and 11, it fails to charge a fraudulent transfer of any reasonably identified property of Strauss Jewelers, Inc.

"In our opinion, the indictment does not inform the defendant of the nature and cause of the accusation with such reasonable certainty that he can make his defense and protect himself after judgment against another prosecution on the same charge.[5]

---

"5. Amendment 6 to the Constitution; United States v. Cruikshank, 1876, 92 U. S. 542, 544, 558, 23 L.Ed. 588; United States v. Simmons, 1878, 96 U.S. 360, 24 L.Ed. 819; Burton v. United States, 1906, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057; Bartell v. United States, 1913, 227 U.S. 427, 33 S.Ct. 383, 57 L.Ed. 583; Hagner v. United States, 1932, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861; United States v. Debrow, 1953, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92."

In Dunbar v. United States, 1895, 156 U.S. 185, 191, 15 S.Ct. 325, 39 L.Ed. 390, in speaking of an indictment for smuggling opium, the Court said:

"The rule is that if the description brings the property, in respect to which the offence is charged, clearly within the scope of the statute creating the offence, and at the same time so identifies it as to enable the defendant to fully prepare his defence, it is sufficient."

That test was adopted by Judge Walker for this Court in ruling upon an indictment charging a bankrupt with concealing property:

"Greater particularity in the description of such moneys, shoes, and other goods was not required, as the property in regard to which the alleged crime was committed was so identified as to enable the accused to prepare his defense. Dunbar v. United States, 15 S.Ct. 325, 156 U.S. 185, 39 L.Ed. 390; United States v. Greenbaum (D.C.) 252 F. 259."

Keslinsky v. United States, 5 Cir., 1926, 12 F.2d 767, 768.

Specifically, as to the concealment of property in violation of 18 U.S.C.A. § 152, most of the pertinent cases are collected in 2 Collier on Bankruptcy, 14th ed., Section 29.05, p. 1177, to support the following text.

"In charging concealment of property the most important requirement and one about which there is disagreement, is a description of the property. Generally, the indictment is held sufficient if the description is in somewhat general terms, such as 'certain goods, wares, moneys, merchandise, shoes, and personal property,' or where the bankrupt was in the jewelry business simply to charge 'certain jewelry.' In such instances, however, it is probably necessary that a more particular description was impossible because of lack of knowledge on the part of the grand jury."

The appellants rely particularly upon Reimer-Gross Co. v. United States, 6 Cir., 1927, 20 F.2d 36, where an indictment was held insufficient which described the property of the bankrupt concealed from its trustee as: " * * * 'certain goods, wares, merchandise, money credits, and other things of value in the amount of $10,000 or more, a further and more particular description thereof being to the grand jurors unknown.'" 20 F.2d at 37.

We have been cited to no case, and have found none, which would justify so vague a description as that employed in the present indictment, viz.: "assets of the value of $2,987.26" or "assets belonging to the estate in bankruptcy."

Upon the principles recently emphasized by the Supreme Court in Smith v. United States, 1959, 360 U.S. 1, 9, 79 S.

Ct. 991, 3 L.Ed.2d 1041, reversing Smith v. United States, 5 Cir., 1957, 250 F.2d 842, and Russell et al. v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240, decided May 21, 1962, we are convinced that the district court erred in failing to sustain the defendants' motion to dismiss the first count of the indictment.

■ As to the conspiracy count, it charges a different offense from the crime which is the object of the conspiracy. United States v. Rabinowich, 1915, 238 U.S. 78, 85, 86, 35 S.Ct. 682, 59 L.Ed. 1211.

"The conspiracy, however fully formed, may fail of its object, however earnestly pursued; the contemplated crime may never be consummated; yet the conspiracy is none the less punishable. Williamson v. United States, supra [207 U.S. 425, 447, 28 S.Ct. 163, 52 L.Ed. 278]. And it is punishable as conspiracy, though the intended crime be accomplished. Heike v. United States, 227 U.S. 131, 144 [33 S.Ct. 226, 57 L.Ed. 450]." 238 U.S. at 86, 35 S.Ct. at 684.

" * * * in a charge of conspiracy the conspiracy is the gist of the crime, and certainty, to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is requisite in stating the object of the conspiracy." Williamson v. United States, 1908, 207 U.S. 425, 447, 28 S.Ct. 163, 52 L. Ed. 278.

"It is not necessary that the substantive offense, which is the aim and object of the conspiracy, should be described with the same particularity in the conspiracy count as in an indictment for the substantive offense itself." Miller v. United States, 6 Cir., 1942, 125 F.2d 517, 518.

See also, Gerson v. United States, 8 Cir., 1928, 25 F.2d 49, 52. We hold that the district court did not err in overruling the motion to dismiss the second count.

■ Should the error as to the first count be disregarded because it did not affect substantial rights, Rule 52(a), Federal Rules of Criminal Procedure? The Government makes an unusually strong argument to that end:

"As a practical matter, besides the fact of having the information peculiarly within their own knowledge, as pointed out in Kanner v. United States, 2 Cir., supra [21 F.2d] 287, and Lyda v. United States, 5 Cir., supra [279 F.2d] 465, the defendants had available to them, through the return on the search warrant, the inventory of the property on which the case was based (Tr. 131). Appellee submits that this may be regarded also as serving the purpose of a bill of particulars. Keslinsky v. United States, 5 Cir., supra [12 F. 2d] p. 768, particularly when considered along with the original complaint (Tr. 23). In addition to the aforesaid, Beitel had had the benefit of the bankruptcy proceedings on August 22, 1960 (Tr. 72–76). Indeed, appellee submits that for such an objection to be urged by a bankrupt, particularly in behalf of the instant bankrupt and his partner, would call into play this court's statements. Parsons v. United States, 5 Cir., 189 F.2d 252, 253. See also United States v. Goldman, supra [56 F.2d] 626; United States v. Achtner, 2 Cir., 144 F.2d 49, 51.

"It is also to be noted that restrictive comments on indictments in bankruptcy cases originated long prior to the initiation of the new rules in 1946, which were designed to eliminate technicalities in criminal proceeding. United States v. De-Brow, 346 U.S. 374, 376 [74 S.Ct. 113, 98 L.Ed. 92].

"It is further apparent that the offense is identified sufficiently for appellants to plead former jeopardy.

The offense is a continuing one, Sultan v. United States, 5 Cir., supra [249 F.2d] 386, and constituted only one offense regardless of the number of items concealed. Edwards v. United States, 9 Cir., 265 F.2d 302, 306.

"Appellee submits that it is the concealment which is the gravamen of the offense. A question as to the identity of the offense, if any remains is obviated by the record. Gerson v. United States, 8 Cir., supra [25 F.2d] p. 53; Hagner v. United States, 285 U.S. 427, 431 [52 S.Ct. 417, 76 L.Ed. 861]."

That argument is best answered in the language of the Supreme Court in the very recent case of Russell et al. v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240, decided May 21, 1962:

"It is argued that any deficiency in the indictments in these cases could have been cured by bills of particulars. But it is a settled rule that a bill of particulars cannot save an invalid indictment. See United States v. Norris, 281 U.S. 619, 622 [50 S.Ct. 424, 74 L.Ed. 1076]; United States v. Lattimore [94 U.S.App. D.C. 268], 215 F.2d 847; Babb v. United States [5 Cir.], 218 F.2d 538; Steiner v. United States [9 Cir.], 229 F.2d 745; United States v. Dierker [D.C.], 164 F.Supp. 304; 4 Anderson, Wharton's Criminal Law and Procedure, § 1870. * * * To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him. See Orfield, Criminal Procedure from Arrest to Appeal, 243.

"This underlying principle is reflected by the settled rule in the federal courts that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form. Ex parte Bain, 121 U.S. 1 [7 S.Ct. 781, 30 L.Ed. 849]; United States v. Norris, 281 U.S. 619 [50 S.Ct. 424, 74 L.Ed. 1076]; Stirone v. United States, 361 U.S. 212 [80 S.Ct. 270, 4 L.Ed.2d 252]. 'If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says "no person shall be held to answer," may be frittered away until its value is almost destroyed * * *. Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney; for, if it be once held that changes can be made by the consent or the order of the court in the body of the indictment as presented by the grand jury, and the prisoner can be called upon to answer to the indictment as thus changed, the restriction which the Constitution places upon the power of the court, in regard to the prerequisite of an indictment, in reality no longer exists.' Ex parte Bain, supra [121 U.S.] at 10, 13 [7 S.Ct. at 786]. We reaffirmed this rule only recently, pointing out that 'The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to of-

fenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge.' Stirone v. United States, supra [361 U.S.] at 218 [80 S.Ct. at 273]."

The defense in the present case was that ownership of the seized property was in Brownrigg by reason of a number of purchases from Beitel evidenced by receipted bills. If we assume that "assets" as used in the first count referred to all or to any part or parts of the seized property, the defendants were nonetheless entitled to have the property identified in the indictment so as to enable them to fully prepare their defenses. Dunbar v. United States, supra, (156 U.S. at 191, 15 S.Ct. at 327). We cannot hold harmless the error in overruling the motions to dismiss Count 1.

(3) As to the denial of the motions for judgment of acquittal, a careful reading and study of the evidence convinces us that it was sufficient to sustain the verdicts of guilty. No good purpose would be served by a detailed recital of that evidence.

In view of the fact that Brownrigg was sentenced to serve five years on both counts concurrently, while Beitel was sentenced to serve five years on the substantive count, now reversed, and one year on the conspiracy count, we call attention to the authority of the district court to reduce Brownrigg's sentence on the conspiracy count, or for that matter either sentence, within 60 days after the receipt of this Court's mandate. Rule 35, Federal Rules of Criminal Procedure. That consideration lies, of course, within the sole discretion of the district court, and we go no further than to call attention to its authority.

The judgments of conviction under Count 2 are affirmed, and the judgments of conviction under Count 1 are reversed and the causes are remanded.

Affirmed in part, and in part reversed, and remanded.